IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

A.H. Employee Company, Ltd., VIJAY L. GOYAL, )
M.D., VINOD K. GOYAL, M.D., AANCHOR )
HEALTH CENTER, LTD., ACCESS HEALTH )
CENTER, LTD., ACE HEALTH CENTER, LTD. )
A C U HEALTH CENTER, ADVANTAGE )
HEALTHCARE, LTD, AFFILIATED HEALTH )
GROUP, LTD., AH LASER AESTHETICS, )
LTD., AMERICAN HEALTH CENTER, LTD., )
CENTER FOR FAMILY HEALTH CARE S.C., )
FORESTVIEW MEDICAL CENTER, )
MICHIGAN AVENUE CENTER FOR HEALTH, )        No. 11 C 4586
LTD; SOUTHWEST PACIFIC LP, FOREST )
VIEW RIVER LP, ARKANSAS-ILLINOIS LP, )
ALABAMA-ILLINOIS LP, ATLANTA- )
ILLINOIS LP, ARIZONA-ILLINOIS LP, )
KANSAS-ILLINOIS LP, LAKE JEFFERSON )
LP, 1640 NORTH PARTNERSHIP LP, )
SOUTHWEST CERMAK LP, and AA REALTY )
MANAGEMENT, LTD )
          Plaintiffs, )
           )
     v. )
           )
FIFTH THIRD BANK and MICHAEL KOZAK, )
individually )
           )
          Defendants. )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

      Vijay and Vinod Goyal (collectively, "the Goyals"), who are both physicians and owners

of various businesses, filed this lawsuit after their long-standing lending relationship with Fifth

Third Bank ("Fifth Third") soured.  The Goyals and their business entities contend that Fifth

Third and loan officer Michael Kozak (collectively, "Defendants")  forced a technical default on

one of their loans because of their Indian ancestry and the fact that certain of their businesses

perform abortions. In their 10-count amended complaint, the Goyals and their various businesses seek to recover for: (1) discrimination and retaliation under 42 U.S.C. § 1981 (Count I); (2) discrimination and retaliation under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1-3) (Count II); (3) a failure to provide a statement explaining the revocation of credit, as required by the ECOA, 15 U.S.C. § 1691(d) (Count III); (4) violation of the Illinois Fairness in Lending Act ("IFLA"), 815 ILCS 120/3 (Count IV); (5) breach of the revolving note for Plaintiff A.H. Employee Company Ltd. ("A.H. Note") (Count V); (6) breach of contract based on the defaults that were triggered by the default of the A.H. Note (Count VI); (7) promissory estoppel (Count VII); (8) intentional misrepresentation (Count VIII); (9) negligent misrepresentation (Count IX); and (10) a violation of the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248 (Count X). (Dkt. No. 24, Ex. A. (First Am. Compl.).)

Before the court is Defendants' "Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6)." (Dkt. No. 27 (Defs.' Mot.).) For the reasons stated herein, the motion is granted in part and denied in part.

BACKGROUND

The following facts are taken from Plaintiffs' First Amended Complaint and are accepted as true for the purposes of this motion. Vijay Goyal was born in India; Vinod Goyal in Nepal.[1] (First Am. Compl. ¶ 4.) Both are of the Hindu religion and are United States citizens. (*Id.*) Among the variety of businesses he Goyals own are Aanchor Health Center, Ltd., Access Health Center, AA Realty Management, Ltd., A C U Health Center, Ltd., Advantage HealthCare Ltd., Affiliated Health Group, Ltd., American Health Center, Ltd., Center for Family Health Care,

---

[1] The relationship between Vijay and Vinod Goyal is not explicit either in the First Amended Complaint or the briefing.

S.C., Forestview Medical Center, Ltd., and Michigan Avenue Center for Health, Ltd. (First Am. Compl. ¶ 5).  Michigan Avenue Center for Health is a surgical center that offers gynecological care.  (*Id.*)  The Goyals also own several limited partnerships: Southwest Pacific LP, Forestview River LP, Arkansas-Illinois LP, Alabama-Illinois LP, Atlanta-Illinois LP, Kansas-Illinois LP, Lake Jefferson LP, and Southwest Cermak LP.  (*Id.* ¶ 6.)   Where appropriate, the Goyal-owned businesses will be referred to collectively as the "Goyal entities."

Fifth Third Bank is incorporated in Ohio and headquartered in Tennessee.  It operates throughout the Chicago area.  (*Id.* ¶ 7.)  Michael Kozak is a vice president at Fifth Third.  (*Id.* ¶ 8.)  The Goyals and their businesses had a long-standing relationship with Fifth Third.  (*Id.* ¶ 9.)  Beginning in 2003, the Goyal entities borrowed an aggregate of more than $9 million, and never made a late payment to Fifth Third.  (*Id.* ¶ 9.)  The Goyal entities had several loans with Fifth Third, including loans to: (1) Southwest Pacific LP with a principal of $557,949.13; (2) Forestview River LP with a principal of $977,701.28; (3) Arkansas-Illinois LP with a principal of 720,000; (4) Alabama-Illinois LP with a principal of $800,000; (5) Atlanta-Illinois LP with a principal of $800,000; (5) Arizona-Illinois LP with a principal of $800,000; (6) Kansas-Illinois LP with a principal of $672,000; (7) Lake Jefferson LP with a principal of $2,046,535; (8) Southwest Cermak LP with a principal of $560,000; (9) 1640 North Partnership LP with a principal of $953,608; (9) American Health Center Ltd. with a principal of $300,000; (10) American Health Center Ltd. with a principal of $100,000; and (11) A.H. Employee Company Ltd. with a principal of $750,000.  (*Id.* ¶ 10.)

The revolving note for the A.H. Employee Company ("A.H. Note") is at the center of this dispute.  It was issued on March 17, 2008, and was secured by guaranties executed by the Goyals

and the following Goyal entities: (1) Affiliated Health Group, Ltd.; (2) American Health Center, Ltd.; (3) Access Health Center, Ltd.; (4) Center for Family Health Care, S.C.; (5) A C U Health Center, Ltd.; (6) Aanchor Health Center, Ltd.; (7) AA Realty Management, Ltd.; (8) Michigan Avenue Center for Health, Ltd.; (9) Advantage Health Care, Ltd.; and (10) Forestview Medical Center, Ltd. (*Id.* ¶¶ 11–12.) Fifth Third also demanded that certain of the Goyal entities execute security agreements pledging their assets as collateral, including: (1) Affiliated Health Group, Ltd.; (2) American Health Center, Ltd.; (3) Access Health Center, Ltd.; (4) A C U Health Center, Ltd.; (5) Aanchor Health Center, Ltd., and (6) Michigan Avenue Center for Health, Ltd. (*Id.* ¶ 13.)

By its terms, the A.H. Note was to automatically renew for a period of one year on the anniversary date of the note, subject to certain conditions. (*Id.* ¶ 14 , *see* Dkt. No. 1, Ex. A.)[2] On both March 17, 2009, and March 17, 2010, the A.H. Note was automatically renewed. (*Id.* ¶ 15.) In early 2008, the A.H. Note, and the rest of the Goyal entities' loan portfolio, was transferred to a new loan officer, Kozak. (*Id.* ¶ 16.) The Goyals had a good relationship with their previous loan officer, Gashi Khadivi. (*Id.*)

In the spring of 2010, certain Fifth Third personnel, including Kozak, met to discuss the Goyal entities' loan portfolio. (*Id.* ¶ 17.) Kozak and the other bank officials discussed the Goyals "and issues that related to their personal characteristics, including, without limitation, their religion." (*Id.*) They also discussed the fact that certain of the Goyal entities performed lawful abortions and expressed their personal religious views that Fifth Third should not lend money to the Goyals as a result of this. (*Id.*)

---

[2] Plaintiffs attached the A.H. Note as an exhibit to their original complaint, but not to the First Amended Complaint, although the First Amended Complaint refers to the note as if it had been attached. *See* ¶ 14.

Following this meeting, Defendants began to take discriminatory actions towards the Plaintiffs in an effort to undermine Fifth Third's banking relationship with them. (*Id.* ¶ 18.) This included efforts to force the A.H. Note into a technical default in an effort to force the other cross-collateralized loans in the Goyal entities' loan portfolio into default. (*Id.*) After the spring 2010 meeting, Fifth Third began to make increasingly burdensome demands for documentation from A.H. Employee Company even though such requests had not been made previously and even though the Goyal entities' financial situation had not changed. (*Id.* ¶ 19.)

Beginning in August or September 2010, Fifth Third, primarily through Kozak, made false statements as well as confusing and contradictory demands. (*Id.* ¶ 20.) When Plaintiffs complied with the demands, Defendants made new demands that were increasingly costly and time-consuming. (*Id.*) On or about Sept. 27, 2010, Vijay Goyal wrote a letter to Kozak complaining about the change in requirements and saying that the Goyals felt they were being discriminated against. (*Id.* ¶ 21.) He subsequently requested that Kozak be removed as their loan officer. (*Id.*)

After the Goyals complained of discrimination, Kozak's and Fifth Third's demands became more onerous, including a demand for "reviewed" financial statements for 2011 (made on Jan. 26, 2011) and a demand for "reviewed" financial statements for the year 2010 in order for Fifth Third to extend the A.H. note beyond its March 17, 2011, anniversary date. (*Id.* ¶ 22.)[3] Plaintiffs agreed to these demands. (*Id.* ¶ 23.) Fifth Third and Kozak misrepresented themselves by, among other things, agreeing that they would grant a 60-day extension to the line of credit if

---

[3] Although the complaint is not entirely clear, "reviewed" financial statements were evidently "reviewed consolidating financial statements" for all the Goyal entities from a certified public accountant ("CPA"). (*See* Dtk. No. 20, Ex. 1.) This is discussed in emails from Kozak to the Goyals that were attached to the Plaintiffs' response to the Defendants' original motion to dismiss. That motion became moot upon the filing of the First Amended Complaint.

the Goyals would obtain assurance from a third-party accountant that it was preparing reviewed consolidated financial statements.  (*Id.* ¶ 24.)  Contradicting its previous representations, on March 21, 2011, Fifth Third sent a notice of default to A.H. Employee Company informing it that it would be in default if the note was not paid off by March 31, 2011, which represented the end of the 10-day cure period.  (*Id.* ¶ 25).  On April 7, 2011, Fifth Third sent notices to the Goyal entities identified as guarantors of the A.H. Note in ¶ 13, demanding that they pay off the outstanding balance of the A.H. Note.  (*Id.* ¶ 26.)  Then, on April 22, 2011, Fifth Third sent default and acceleration notices to several of the Goyal entities identified as borrowers in ¶ 10, informing them that the default on the A.H. Note was a default under A.H. Employee Company's  guaranty of the various entities' loans.  (*Id.* ¶ 27.)  The Goyal entities' loans had been in good standing until the April 22, 2011, default notice was issued.  (*Id.* ¶ 28.)  On April 27, 2011, A.H. Employee Company paid off the A.H. Note in full, including legal fees. (*Id.* ¶ 29.)  Despite this, Fifth Third continues to maintain that all of the Goyal entities' loans are in default due to the alleged default on the A.H. Note.  (*Id.* ¶ 30.)  The Goyals maintain that Defendants have treated them differently than similarly situated customers who do not share their ethnicity, color, or religion.  (*Id.* ¶ 31.)

LEGAL STANDARD

Defendants have moved to dismiss under Rules 12(b)(1) and 12(b)(6).  Defendants seek dismissal under 12(b)(1) because, they contend, various plaintiffs lack standing to pursue certain counts.  Standing is a determination as to "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Rule 12(b)(1) motions to dismiss may be either facial or factual attacks on jurisdiction.

*Mohamed v. Dorochoff*, No. 11 C 1610, 2011 WL 4496228, at *2 (N.D. Ill. Sept. 22, 2011).

Facial attacks go to the sufficiency of the pleadings, as compared to factual challenges in which

the contention is that the complaint is formally sufficient, but that there is in fact no subject-

matter jurisdiction. *Id.* (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946

(7th Cir. 2003)). In the case of a factual challenge, the movant may use affidavits and other

materials to support its motion. *United Phosphorus*, 322 F.3d at 946. Here, Defendants are not

explicit about what type of challenge they are pursuing, but their standing challenge is based

entirely on the First Amended complaint and various attachments, so it appears to be a facial

challenge. Regardless, Plaintiffs bear the burden of showing that standing exists. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts,

accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although a complaint's factual allegations need not be detailed, they must provide more than

"labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege

enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella*, 770 F. Supp. 2d

936, 941–42 (N.D. Ill. 2011) (quoting *Twombly*, 550 U.S. at 555). In ruling on such a motion,

the question is whether the facts, accepted as true, "present a story that holds together."

*Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).


## ANALYSIS

As a preliminary matter, Defendants are correct that Plaintiff's pleading in regard to the

Goyal entities is, in some instances, confusing at best. Two of the Goyal entities, Ace Health

Center and AH Laser Aesthetics, appear in the caption of the First Amended Complaint but are mentioned nowhere in its body. All claims brought on behalf of these entities are dismissed. Additionally, while the First Amended Complaint alleges that Southwest Pacific LP; Arkansas-Illinois LP; Alabama-Illinois LP; Atlanta-Illinois LP; Arizona-Illinois LP; Kansas-Illinois LP; Lake Jefferson LP; 1640 North Partnership LP; and Southwest Cermak LP had loans with Fifth Third, Defendants argue that it is not clear how these entities are related to the A.H. Note. (Dkt. No. 28 (Defs.'Mem. in Supp., 6–7.)

While the First Amended Complaint is not a model of pleading clarity, it seems that Plaintiffs are alleging that when the A.H. Note went into default, this triggered a default of those entities' loans under the A.H. Employee Co.'s guaranty of the loans (First Am. Compl. ¶¶ 27–29, Dkt. No. 35 (Pl.'s Resp., 14).) Reading the complaint in the light most favorable to the Plaintiffs, the court will assume this to be true for the purposes of ruling on this motion. The court will address each of the arguments raised by Defendants in turn.

1.    Plaintiffs' Claims under Section 1981 (Count I)

In Count I, Plaintiffs seek to recover for discrimination and retaliation under § 1981. Defendants challenge Plaintiffs' pleading on two grounds. First, Defendants argue that many of the Plaintiff Goyal entities were merely guarantors of the A.H. Note and as such lack standing under § 1981. Next, they argue that Plaintiffs' allegations of discrimination are conclusory.


**A. Whether the Claim is Adequately Pleaded**

As implicated in this case, § 1981 is meant to remedy racial discrimination in contractual relationships. *See* 42 U.S.C. § 1981(a)-(c). To establish a § 1981 claim, a plaintiff must show:

(1) that he is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; (3) that the discrimination related to the making or enforcing of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). The Seventh Circuit has recently held that "while the federal pleading standard is quite forgiving, our recent decisions have emphasized that 'the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ray v. City of Chi.*, 629 F.3d 660, 662–63 (7th Cir. 2011) (internal citations and quotations omitted). In the context of racial discrimination, this burden is not onerous. *See Swanson*, 614 F.3d at 405 (holding that a housing discrimination claim satisfied Fed. R. Civ. P. 8 because it identified the type of discrimination, who carried it out, and when). Here, Plaintiffs allege that Defendants discriminated against the Goyals because of their East Indian ethnicity by forcing the A.H. Note into default and by retaliating against Plaintiffs when the Goyals complained of discrimination. (First Am. Compl. ¶¶ 36–39.) At this stage of the case, Plaintiffs' pleading of discriminatory intent is sufficient. Their allegations of standing, however, are more problematic.

### B. The Standing of the Various Plaintiffs

Turning to Defendants' standing challenge, the U.S. Supreme Court has held that any claim brought under § 1981 must identify an impaired contractual relationship under which the plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). The question here is which of the twenty-five named plaintiffs has successfully done so.

In *Domino's Pizza,* the U.S. Supreme Court held that contractual privity is the *sine qua non* of a § 1981 claim. 546 U.S. at 478. In that case, the plaintiff, John McDonald, was an African-American and the owner of JWM Investments, a company that entered into contracts

with Domino's to build restaurants. *Id.* at 472. Domino's allegedly breached the contract, and McDonald sought to personally assert a § 1981 claim against it, asserting that Domino's breached the contracts because of racial animus toward him. *Id.* at 473. McDonald sought to recover pay and benefits he would have received but for the breach of contract. *Id.* at 474.

The Supreme Court rejected McDonald's argument that he had standing to sue because he was the actual target of discrimination and because he lost benefits that would have inured to him had the contracts not been impaired. *Id.* at 478. Rather, consistent with the plain text of the statute, § 1981 plaintiffs "must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480. This requires, at the very least, that the plaintiff have rights under the contract, with the Court leaving open the possibility that a third-party beneficiary could bring a § 1981 claim. *Id.* at 476 n.3.

It is clear under the reasoning of *Domino's Pizza* that A.H. Employee Company has standing to sue because it was a party to the A.H. Note and because it has the "imputed racial identity" of its owners, the Goyals. *The Amber Pyramid, Inc. v. Buffington Harbor Riverboats, LLC*, 129 Fed. App'x 292, 295 (7th Cir. 2005) (allowing corporate standing to bring a § 1981 claim). It is also clear that the Goyals do not have standing to sue under § 1981 merely because they are the owners of A.H. Employee Company and allegedly experienced economic loss because of the impaired contractual relationship. This is a claim that belongs to A.H. Employee Company.

Plaintiffs contend that the fact that "Fifth Third demanded that the identified named Plaintiffs cross collateralize the loans of one another or guarantee the loans of one another" is enough to confer standing on all the named Plaintiffs. (Pls.' Resp., 7.) This is not a particularly

10

well-developed argument, as the Plaintiffs make no attempt to distinguish among the Goyals and their various entities, even though they played different roles in securing the A.H. Note, and even though some of the Goyal entities had their own loans that allegedly went into default as a result of the default on the A.H. Note. The fact that certain entities, and the Goyals themselves, were guarantors of the A.H. Note does not give them rights under the note. *Beasley v. Arcapita Inc.*, 436 Fed. App'x 264, 266 (4th Cir. 2011); *see also Thomas v. Nat'l Canada Fin. Corp.*, No. 94 C 4136, 1995 WL 54473, at *2 (N.D. Ill. 1995) (holding that guarantors of loan agreement did not have standing to sue for breach of the agreement because their injuries were derivative of those of the borrower). In order to have standing, a guarantor of a corporate debt must allege an injury separate and distinct from the corporation's injury. *Thomas*, 1995 WL 54473, at *2. Here, the First Amended Complaint does not allege a breach of the guaranty agreements, but only of the A.H. Note and what the complaint describes as the "cross-defaulted" notes in ¶ 10. Therefore, the Goyal entities as guarantors have failed to plead any distinct injury that gives them standing to pursue a § 1981 claim, so they are dismissed for lack of standing.

However, as to those Goyal entities listed in ¶ 10[4] that contend their own loans went into default because Fifth Third determined that A.H. Employee Company had defaulted on the A.H. note, the analysis is different. The gist of Plaintiffs' complaint is that Defendants intended to force a technical default of the A.H. Note in order to force all of these other loans into default as well. (*Id.* ¶ 18.) The Goyal entities whose loans went into default have standing to sue under § 1981 because they are alleging a violation of their own contractual rights resulting from Defendants' alleged sabotage. Therefore, for the reasons stated above, the court will allow

---

[4] Again, while the complaint is not entirely clear on this point, based on a liberal reading of Plaintiffs' complaint, the court assumes these are the entities whose loans were cross-defaulted.

Count I to proceed as to A.H. Employee Company and the Goyal entities whose loans were allegedly cross-defaulted: Southwest Pacific LP, Forestview River LP, Arkansas-Illinois LP, Alabama-Illinois LP, Atlanta-Illinois LP, Arizona-Illinois LP, Kansas-Illinois LP, Lake Jefferson LP, Southwest Cermak LP, 1640 North Partnership LP and American Health Center Ltd. All other Plaintiffs lack standing to pursue a §1981 claim and are dismissed.

2. Plaintiffs' Claims under the Equal Credit Opportunity Act (Counts II and III)

In Count II, Plaintiffs seek to recover for a breach of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1), which makes it unlawful for a creditor to discriminate or relaliate against any applicant with respect to a credit transaction on the basis of race, color, religion, or national origin. The statute also requires that "[each] applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." § 1691(d)(2).

As for Plaintiffs' claims under § 1691(a), the complaint alleges that all the Plaintiffs were applicants under the ECOA because "each and every Plaintiff is or may become contractually liable regarding an extension of credit or other credit as provided under the ECOA. (First. Am. Comp. ¶ 44.) At issue here is the definition of "applicant" under the statute. The Federal Reserve Board has issued a regulation defining an applicant as:

> any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers, and similar parties.

12 C.F.R. § 202.2(e). Section 202.7(d), which is not at issue in this case, bars a creditor from requiring the signature of a qualified applicant's spouse. In *Moran v. Mid-Atlantic Mkt. Dev. Co.*, 476 F.3d 436, 441 (7th Cir. 2010), the Seventh Circuit in dicta questioned whether "the

12

statute could be stretched far enough to allow" the inclusion of guarantors in the definition of applicant. The Seventh Circuit reasoned that while deference to the administrative interpretation of ambiguous statutes was appropriate, there was nothing ambiguous about the definition of "applicant," and including guarantors within that definition could open up "vistas of liability" that Congress had not anticipated. *Id.*

Plaintiffs note that the Seventh Circuit cited 12 C.F.R. § 202.2(e) in a recent ruling, *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011). (Pls.' Resp., 8.) While this is correct, the Seventh Circuit did not discuss whether guarantors may bring claims under the ECOA in *Estate of Davis*. The court agrees with Defendants that the guarantors of the A.H. Note lack standing to bring a claim under the ECOA. The ECOA's original definition of "applicant" excluded guarantors, but the definition was amended in 1985 to include such parties for the purposes of the spousal signature provision. *Durdin v. Cheyenne Mountain Bank*, 98 P.3d 899, 902 (Colo. App. 2004). The official staff commentary regarding the change states that the principal effect was to give guarantors standing under §207(d). *Id.* (citing 50 Fed. Reg. 48020 (1985)). In fact, the commentary added, "The Board had proposed to define such parties as applicants without limitation. The final version of the definition was modified in response to the concerns of industry commenters who believed that the unlimited inclusion of guarantors and similar parties in the definition might subject creditors to a risk of liability for technical violations of various provisions of the regulation." 50 Fed. Reg. 48020. This commentary indicates a desire to limit the definition of "applicant," and to include guarantors only under circumstances not present in this case.

For these reasons, Plaintiffs do not have standing to bring a claim under the ECOA based on their status as guarantors of the A.H. Note. It is unclear to the court, however, whether the various Goyal entities are bringing a claim based solely on their status as guarantors of the A.H. Note, or because of their own status as holders of notes with Fifth Third that went into default as a result of the default of the A.H. Note, although their response indicates the latter. (*See* Pls.' Resp., 9: "All of the guarantors and the cross-collateralized loans [sic] became contractually liable, and thus they have standing as a alleged in the complaint."). A complaint on behalf of the holders of the notes that were cross-collateralized for discrimination or retaliation may be viable, and Plaintiffs are given until March 15, 2012 to replead their claim under § 1691(a) if they choose. Otherwise, the only appropriate plaintiff is the A.H. Employee Company, which was a party to the A.H. Note. Defendants additionally argue that A.H. Employee Company failed to plead sufficient facts to support discrimination or retaliation, but that argument is rejected for the reasons discussed in relation to Plaintiffs' § 1981 claim.

Under § 1691(d)(2) of the ECOA, a creditor who takes an "adverse action" against an applicant for credit must give the applicant a statement of reasons for the action. In addition to their standing argument as to the guarantor plaintiffs, Defendants contend that this claim must be dismissed because an "adverse action" does not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." 15 U.S.C. § 1691(d)(6). As such, Defendants contend, the ECOA does not require a creditor to provide any notification to a borrower who is in default. (Defs.' Mem. in Support, 10.) However, the authority upon which Defendants rely, *Howard v. Brim*, No. 3:06CV70, 2006 WL 4757828, at *4–5 (W.D.N.C. June 8, 2006), is distinguishable because it is a case in which

the creditor's adverse action resulted from the plaintiff's delinquency.  Here, accepting the allegations of the complaint as true, Plaintiffs allege that Defendants' wrongful actions preceded the default because they made no late payments and provided the information that Defendants requested, but defendants nonetheless wrongfully forced a technical default of the A.H. Note. (First Am. Compl. ¶¶ 9, 22–27.)  Given these allegations, the court will allow this claim to go forward as to A.H. Employee Company.  However, guarantors do not have standing to bring a claim under this section of the ECOA for the reasons explained above.  If the holders of the cross-collateralized notes are claiming that they did not receive a statements of reasons for the revocation of their own credit, this is not clear from Plaintiffs' complaint, which refers only to the A.H. Note.  (First Am. Compl. ¶ 50–52.)  If Plaintiffs wish to make such a claim, they should replead the complaint to reflect this by March 15, 2012.

   3. <u>Plaintiffs' Claims Under the Illinois Fairness in Lending Act (Count IV)</u>

   All Plaintiffs bring a claim in Count IV under the Illinois Fairness in Lending Act ("IFLA"), 815 ILCS 120/3, alleging that Defendants violated the IFLA by: (1) denying or varying the terms of Plaintiffs' loans without having considered "all of the regular and dependable income of the Plaintiffs," and/or (2) denying or varying the terms of Plaintiffs' loans "because of the childbearing capacity of the persons who would benefit by the loans," and/or; (3) "by utilizing lending standards that have no economic basis and are discriminatory in effect." (First Am. Compl. ¶ 54.)[5]

---

[5] This appears to be a parroting of the statutory language of the IFLA, which prohibits a lender from denying or varying the terms of a loan "without having considered all of the regular and dependable income of each person who would be liable for repayment of the loan," 815 ILCS 120/3(b), and utilizing "lending standards that have no economic basis and which are discriminatory in effect." 815 ILCS 120/3(d).  The statute, however, does not prohibit the denial of loans based on the childbearing capacity of persons who would benefit from the loan.  Rather, it prohibits the denial or variance of a loan "on the sole basis of the childbearing capacity of an applicant or an applicant's

Defendants argue the Plaintiffs' claim under the IFLA must be dismissed because the guarantor Plaintiffs do not have standing and because the IFLA requires a plaintiff to choose between pursuing a remedy under the IFLA or under another applicable law. Specifically, the IFLA provides:

> If the same events or circumstances would constitute the basis for an action under this Act or an action under any other Act, the aggrieved person may elect between the remedies proposed by the two Acts but may not bring actions, either administrative or judicial, under more than one of the two Acts in relation to those same events or circumstances.

815 ILCS 120/5(b). Here, Plaintiffs are not proceeding under 815 ILCS 120/3(c-5), which prohibits the denial or variance of a loan on the basis of race or national origin, but rather under the provisions that provide relief if a lender denies a loan or varies its terms without considering "all of the regular and dependable income of each person who would be liable for repayment of the loan," 815 ILCS 120/3(b), or if a lender "utilizes lending standards that have no economic basis and which are discriminatory in effect." 815 ILCS 12/3(c). Plaintiffs argue that there is no other law that provides relief under these circumstances, so their IFLA claim should be allowed to go forward. (Pls.' Resp., 11.)

The parties do not present any Illinois case law interpreting the IFLA's election-of-remedies provision, and the court has not found any. However, courts within this district have interpreted it to bar IFLA claims if the plaintiff has brought a cause of action arising from the same transaction under a different statute. *See Haymer v. Countrywide Bank*, No. 10 C 5910, 2011 WL 2790172, at *2 (N.D. Ill. July 15, 2011) (dismissing IFLA claim for improvident lending and discrimination where the plaintiff also brought claims under the ECOA and other federal statutes); *Smith v. United Residential Servs. & Real Estate, Inc.*, No. 2011 WL 3047492,

_spouse." 815 ILCS 120/3(c). The facts of this case do not implicate this last provision._

at *4 (N.D. Ill. July 25, 2011) (similarly dismissing IFLA claim where plaintiff had brought claims under a variety of other federal statutes). Because Plaintiffs' claims all arise out of the same events or circumstances, and because Plaintiffs are pursuing other statutory claims, their IFLA claim is dismissed.

### 4. Plaintiffs' Claims for Breach of the A.H. Note (Count V)

In Count V, Plaintiffs seek to recover for breach of the A.H. Note. The A.H. Note was signed by Vinod Goyal as president on behalf of A.H. Employee Co., Ltd., the borrower. (Dkt. No. 1., Ex. A.) Defendants argue that this count is insufficiently pleaded, and that the Goyal entities that served as guarantors on the A.H. Note lack standing. The court agrees.

Plaintiffs argue that all of the named guarantors also have standing to bring a breach of contract claim because they were directly injured by the breach of contract. Once again, Plaintiffs do not draw any real distinction between the entities that were guarantors on the A.H. Note and those that had their own loans with Fifth Third. Rather, Plaintiff argues, "A benefit was directly received by each of the entities in that they were dependent upon the good standing of A.H. Employee as a guarantor to their loans to continue with their own lending relationship with Fifth Third; or other Plaintiffs were guarantors of the [A.H. Note] and thus had a mutual interest in the good standing of that entity." (Pls.' Resp., 12.)[6]

The law is clear that status as a guarantor of a corporate debt does not result in a contractual relationship sufficient to create standing for breach of contract. *See, e.g., Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1336 (7th Cir. 1989); *Shreeji Krupa v.*

---

[6] The court points out that Count V is brought on behalf of "Plaintiff A.H.E [A.H. Employee Company] and all Named Guarantors." It is not clear, then, that Plaintiffs are even bringing a claim in Count V on behalf of those entities that had cross-collateralized loans with Fifth Third that went into default as a result of the default of the A.H. Note, particularly because a claim on behalf of those entities is brought in Count VI. Greater clarity of pleading would be helpful to the court.

*Leonardi Enters.*, No. 04 C 7809, 2007 WL 178305, at *3 (N.D. Ill. Jan. 17, 2007);

*Thomas,* 1995 WL 54473, at *2 (N.D. Ill. 1995). In *Mid-State Fertilizer*, the Seventh Circuit

reasoned that guarantors are contingent creditors who succeed to the original creditor's claim

against a company. 877 F.3d at 1336. Just as a creditor cannot directly recover for an injury

inflicted on a company, guarantors cannot do so. *Id.*

Plaintiffs make an argument that they are all third-party beneficiaries of the A.H. Note,

but they point to no language in the A.H. Note or the guaranties to that effect. Under Illinois

law, a third party may sue for breach of contract if the contract was entered into for the direct

benefit of that party, but the contract must at least define the third party by description of class,

and the particular class member must be identified at the time performance is due. *Indus. Hard*

*Chrome, Ltd. v. Hetran, Inc.*, 76 F. Supp. 2d 903, 905 (N.D. Ill. 1999). The other entities that

had loans with Fifth Third have brought their own claim in Count VI that their respective notes

were breached. As it stands, Count V of the complaint refers only to the breach of the A.H.

Note, First Am. Compl. ¶ 59– 61, and only A.H. Employee Company has standing to bring that

claim.

Under Illinois law, a plaintiff must allege four elements to state a breach of contract

claim: (1) the existence of a valid and enforceable contract; (2) substantial performance by the

plaintiff; (3) a breach by the defendant; and (4) damages. *Reger Development, LLC v. Nat'l City*

*Bank,* 592 F.3d 759, 764 (7th Cir.2010). At issue here is the sufficiency of A.H. Employee

Co.'s allegations of a breach. Defendants argue that A.H. Employee Company has pleaded itself

out of court because its claim for breach of the A.H. Note is predicated on its assertion that Fifth

Third failed to provide requisite notice of its intent to renew the note, *see* Pl.'s Compl. ¶ 59, but

plaintiffs have included documents that prove that Fifth Third sent proper notice of non-renewal. Defendants refer to exhibits that Plaintiffs attached to their response to Defendants' initial motion to dismiss, prior to this court granting leave to Plaintiffs to file their First Amended Complaint. (Dkt. No. 20., Ex. 1, 2.) Those exhibits are emails from Kozak to Vijay Goyal. In an email dated Jan. 26, 2011, Kozak stated that he was attaching the required notice of non-renewal, adding that "[t]his letter will serve as the notice that is required per the loan agreement (copy also attached) prior to the anniversary date of the note (March 17, 2011.)"[7] In response, A.H. Employee Co. admits that notice was sent, but contends that Kozak and Fifth Third made misrepresentations and acted in bad faith. (Pls.' Resp., 13.) A. H. Employee Co. points to a Feb. 28, 2011, email in which Kozak told Vijay Goyal that if the bank could receive a commitment letter from a third party CPA confirming that the CPA was preparing the financials as requested, "we would consider a 60 day extension to allow the CPA time to complete. Until we have that commitment letter, the line of credit facility in the name of A.H. Employee Company and ACH facilities in the name of American Health Center will expire on 3/17/11." (Dkt. No. 20, Ex. 2.)

A.H. Employee Co. contends in its response that it did send such a commitment letter, but that Defendants defaulted the A.H. Note anyway without further notice. (Pls.' Resp., 13.) However, the First Amended Complaint does not rely on these facts, but rather alleges that Fifth Third failed to provide written notice of its intent not to renew the A.H. Note at least 30 days prior to its maturity date. (Pl.'s Comp. ¶ 58, 59.) Since A. H. Employee Co. concedes that Fifth Third did provide notice, its breach of contract claim cannot go forward on this basis. A.H. Employee Company may be able to plead a valid breach of contract claim, but it has not done so.

---

[7] By its terms, the note was to automatically renew on March 17, 2011, unless Fifth Third delivered to A.H. Employee Co. written notice stating that the maturity date would note be extended at least 30 days prior to the anniversary date of the note. (Dkt. No. 1, Ex A, ¶ 1.)

A.H. Employee Co. is given until March 15, 2012, to file a Second Amended Complaint consistent with this opinion if it desires to replead its claim for breach of contract.

5. <u>Plaintiffs' Claims for Breach of the Cross-Defaulted Loans (Count VI)</u>

In Count VI, all Plaintiffs seek to recover for the breach of the cross-defaulted loans, apparently identified in ¶ 10 of the complaint.[8]  Plaintiffs allege that all of their loans went into default because of the improper default of the A.H. Note.  (Pl.'s Compl. ¶ 63.)  Fifth Third breached these notes when it improperly called them into default in its April 22, 2011, default and acceleration notices.  (*Id.* ¶ 64).  Fifth Third additionally breached its contracts with Plaintiffs because any alleged default triggered by the default of the A.H. Note was cured by April 27, 2011, the date on which the A.H. Note was paid off in full.  (*Id.* ¶ 65).  As a result of the breach, all Plaintiffs, whether guarantors, those that provide security agreements, or those that had cross-collateralized loans, have incurred significant money damages.  (*Id.* ¶ 66).

As an initial matter, Defendants have a point that Plaintiffs should be clearer about identifying the cross-defaulted loans, their terms, and the parties thereto.  Although the court assumes these are the loans outlined in ¶ 10, Plaintiffs when repleading in their Second Amended Complaint should make this clear.  Because Count VI is premised on the breach of the A.H. Note, it is dismissed without prejudice.  Plaintiffs should replead this count by March 15, 2012 to clarify the basis for the breach of that note.  For the reasons outlined herein, Count VI may be brought only on behalf of Plaintiffs who were parties to the cross-defaulted loans, not guarantors.  Additionally, Plaintiffs failed to explain why Kozak, as an agent of Fifth Third and not a party to

---

[8] In their response, Plaintiffs contend that all the cross defaulted loans are "identified in paragraph 10a-1."  There is no such paragraph, but the court presumes that Plaintiffs are referring to the loans listed in paragraph ¶ 10.

the notes, can be held liable for either alleged breach of contract. Kozak is dismissed from these counts, and Plaintiffs' repleading of Count V and Count VI should be directed only to Fifth Third.

5. Plaintiffs' Claims for Promissory Estoppel, Negligent Misrepresentation, and Intentional Misrepresentation (Count VII, VIII, IX)

In Count VII, all Plaintiffs allege promissory estoppel and that they justifiably relied on Defendants' promises that if Defendants' demands for more financial information were met, Fifth Third would automatically renew the A.H. Note. (First Am. Compl. ¶ 67–69.) Plaintiffs contend that they relied on Defendants' representations to their detriment, and that despite providing all of the requested information, including a commitment letter from a third party CPA, Fifth Third refused to consider an extension of the note in good faith, and declared that the A.H. Note was in default. (*Id*. at ¶ 70.)

Count VIII, which was brought on behalf of the Goyals and A.H. Employee Co., alleges intentional misrepresentation. Plaintiffs allege that Kozak falsely told them the A.H. Note would be extended if certain financial information was provided, and falsely told them they would have a 60-day extension of the note in order to provide that information. (*Id.* at ¶ 74.) Kozak knew his statements were false, and Plaintiffs relied on the statements, suffering damages. (*Id.* at ¶ 75–77.) In Count IX, also brought on behalf of the Goyals and A.H. Employee Co., Plaintiffs allege that those same statements were negligently made by Kozak. (*Id.* ¶ 80). Kozak intended that Plaintiffs rely on the statements and they did so, resulting in damages. (*Id*. ¶¶ 80–81.)

Defendants argue, in part, that all of these claims are barred by the Illinois Credit Agreements Act ("ICAA"). The ICAA provides that a debtor cannot maintain an action based

on a "credit agreement" unless the agreement "is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." 815 ILCS 160/2. This has been described as a "strong form of the statute of frauds." *Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 754 (7th Cir. 2001) (internal citations omitted). The ICAA requires the signatures of both parties and "bars all actions that are in any way related to the alleged credit agreement, whether those actions sound in contract or in tort," and even though this requirement may lead to harsh results. *Id.* In sum, Illinois courts and courts within this district have held that the ICAA "is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations, omissions or conduct in a credit relationship." *VR Holdings, Inc. v. LaSalle Bus. Credit, Inc.*, No. 01 C 3012, 2002 WL 356515, at *3 (N.D. Ill. March 6, 2002) (citing

*McAloon v. Northwest Bancorp, Inc.,* 654 N.E.2d 1091, 1094 (Ill. App. Ct. 1995)).

Plaintiffs rely on certain emails from Kozak, *see* Pl.'s Compl. ¶ 24, but fail to allege that the emails expressed an agreement to extend the A.H. Note, that the emails set forth the relevant terms and conditions, or that they were signed by both parties. One of the emails, in fact, says that Fifth Third would "consider" renewal of the A.H. Note if it received a commitment letter from a third party CPA confirming that the requested financial information was being prepared. (Dkt. No. 20, Ex. 1.) Because Plaintiffs have not met the requirements of the ICAA, Counts VII through IX are dismissed with prejudice, and the court need not address Defendants' alternative argument that certain Plaintiffs lack standing.

6. <u>Plaintiffs' Claim under the Freedom of Access to Clinic Entrances Act (Count X)</u>

In Count X, several of the Plaintiffs, Michigan Avenue Center for Health, Access Health Center, Ltd., A C U Health Center, Advantage Healthcare, Aanchor Health Center, and Forestview Medical Center, allege that Defendants violated the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248.  The discriminatory acts, Plaintiffs allege, were motivated by Defendants' intent to prevent these clinics from providing abortions.  (First Am. Compl. ¶ 83.)  Plaintiffs allege that Defendants' conduct in issuing notices of default "constitute threats of economic force, which induced reasonable fear on the part of Plaintiffs that Fifth Third would use that economic force to prevent Michigan Avenue Center for Health from providing abortions.  Fifth Third has the apparent ability to carry out the threat."  (*Id.* at ¶ 84.)[9] Plaintiffs seek injunctive relief and punitive damages, although it not clear exactly what manner of an injunction they seek.  (*Id.* at ¶¶ 86–88.)  At any rate, Plaintiffs essentially allege that by causing the A.H. Note's default, and that of the cross-collateralized loans, Fifth Third "substantially impacted the functioning and economic viability of the reproductive health clinics that relied on the loan from Fifth Third bank for years."  (Pls.' Resp., 17.)[10]

The key question here is whether the FACE Act applies to the use or threat of "economic force."  Defendants contend, based on the plain language of the statute, that it does not.  The court agrees.  In interpreting a statute, the court must begin with its plain language. *United States v. LaFaive,* 618 F.3d 613, 616 (7th Cir. 2010).  The court may refer to " 'the language itself, the specific context in which that language is used, and the broader context of the statute as a

---

[9] It is not clear why the other clinics are named in the header of this count, as the allegations within it refer only to Michigan Avenue Center for Health.  (*See* First Am. Compl. ¶ 84–92.)  Once again, Plaintiffs should have taken the time in formulating their amended complaint to consider which Plaintiffs were injured by certain alleged actions and to clearly identify these Plaintiffs and the manner in which they were allegedly injured in the complaint.

[10] The court notes, however, that Michigan Avenue Center for Health is not listed in ¶ 10 of the complaint as a borrower of the cross-collateralized loans.

whole." *Id.* (internal citations and quotations omitted). The court will consider the legislative history of a statute only when the statute is ambiguous. *DirecTV, Inc. v. Barczewski,* 604 F.3d 1004, 1008 (7th Cir. 2010).

The FACE Act provides that civil and criminal penalties may be imposed on a person who:

(1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services;

(2) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship; or

(3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services, or intentionally damages or destroys the property of a place of religious worship.

18 U.S.C. § 248 (a)(1-3).

It is clear to the court that the "force" to which the statute refers is not economic force, but physical force, particularly efforts to bar women from entering reproductive health clinics. The definitions provided by the statute for its bear this out. To "'interfere with' means to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). To "'intimidate' means to place a person in reasonable apprehension of bodily harm." 18 U.S.C. § 248(e)(3). A "physical obstruction" is that which "render[s] impassable ingress to or egress from a facility that provides reproductive health services . . . ." In the context of First Amendment challenges, other courts have interpreted the term "force" in the FACE Act to be limited to physical force. *Cheffer v.*

*Reno*, 55 F.3d 1517, 1521 (11th Cir. 1995) (holding that the defined terms in the statute supported an interpretation of "force" as physical force); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 648 (4th Cir. 1995) (interpreting "force" within the statute to mean the use of force, true threats of force, and physical obstructions).

Plaintiffs point to the legislative history of the FACE Act as support for their position that the statute implicates "economic force," but the court need not consider this when the language of the Act is clear. Regardless, Plaintiffs' reading of the legislative history is flawed. In enacting the FACE Act, Congress found that there had been "an interstate campaign of violent, threatening, obstructive, and destructive conduct aimed at providers of reproductive health services across the nation." H.R. Rep. No. 103-488, at 7 (1994) (Conf. Rep.), reprinted in 1994 U.S.C.C.A.N. 699, 724. Congress cited conduct including blockades, arsons, death threats, and even murder. *Id.* It found that such conduct burdened interstate commerce by forcing patients to travel to other states to obtain care and by interfering with health care provider's ability to purchase and lease facilities and equipment, sell goods and services, and buy supplies and medicine from other states. *Id.* Congress made no reference to any sort of economic intimidation in these findings. *Id.*

The Seventh Circuit, in *United States v. Wilson*, 73 F.3d 675, 679–80 (1995), found the FACE Act to be a constitutional exercise of Congress' power to regulate activities that substantially affect interstate commerce. Plaintiffs seem to argue that because Congress enacted the FACE Act under the Commerce Clause and addressed the economic consequences of obstructing clinics, it follows that Congress intended to ban economic activity that affects the functioning of clinics. (Pls.' Resp., 17–18.) This is a non-sequitur, however. Just because

25

Congress is exercising its power under the Commerce Clause does not mean that it must ban all activity that might substantially affect interstate commerce, or that it constitutionally could do so. It is clear that in enacting the FACE Act Congress was concerned with violence, threats of violence, and physical obstructions to clinic access. The Act is inapplicable here, and Count X of Plaintiffs complaint is dismissed with prejudice.

7. Michael Kozak's Status as a Defendant

Finally, Defendants contend that Kozak must be dismissed from the suit because the conduct at issue is Fifth Third's non-renewal of the A.H. Note, and Fifth Third's actions cannot be imputed to its agent. (Defs.' Mem. in Support, 7.) However, under section 1981, individuals who are personally involved in impairing the right to contract may be held liable. *See Patel v. Bd. of Governors of State Colls. and Univs.*, 92 C 8300, 1997 WL 399644, at *3–4 (N.D. Ill. July 11, 1997). Plaintiffs allege that Kozak was personally involved in the alleged efforts to force the A.H. Note into default, which in turn triggered the default of the cross-collateralized loans in the portfolio, and that he acted with discriminatory animus. (Pls.' First Am. Compl. ¶¶ 17, 18, 20, 21, 22, 24, and 31.) As such, Kozak will not be dismissed from Count I. The parties direct no specific arguments as to whether Kozak is a proper defendant under the ECOA for the purposes of Counts II and III. Under ECOA, a creditor is defined as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(l). Because the parties do not address whether Kozak meets this definition, the court will not dismiss the ECOA claim against him at this time.

CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part. Count I, alleging a violation of § 1981, may go forward as to A.H. Employee Co. and those Goyal entities that had loans with Fifth Third that were defaulted as a result of A.H. Employee Co.'s alleged default of the A.H. Note. Count II, alleging discrimination and retaliation under § 1691(a) of the ECOA, may go forward as to A.H. Employee Co., with Plaintiffs to replead their claim by March 15, 2012, to clarify whether they are bring a claim on behalf of the holders of the cross-collateralized notes. Similarly, Plaintiffs' claim in Count III under § 1691(d) of the ECOA may go forward as to A.H. Employee Co., but should be replead as to the holders of the cross-collateralized notes by March 15, 2012. Count IV, alleging a violation of the IFLA, 815 ILCS 120/3, is dismissed with prejudice. Counts V and VI, alleging a breach of the A.H. Note and the cross-collateralized loans, respectively, are dismissed, with leave to replead by March 15, 2012. Counts VII through IX, alleging promissory estoppel, negligent misrepresentation, and intentional misrepresentation, are dismissed with prejudice. Count X, alleging a violation of the FACE Act, 18 U.S.C. § 248, also is dismissed with prejudice. Plaintiffs are given leave to file a Second Amended Complaint no later than March 15, 2012. Defendants' answer is to be filed no later than March 29, 2012. The case is set for a report on status at 9:00 AM on April 3, 2012, in courtroom 1041.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: March 1, 2012