IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A.H. EMPLOYEE COMPANY, LTD., SOUTHWEST PACIFIC LP, FOREST VIEW RIVER LP, ALABAMA-ILLINOIS LP, ATLANTA-ILLINOIS LP, ARIZONA-ILLINOIS LP, LAKE JEFFERSON LP, 1640 NORTH PARTNERSHIP LP, and SOUTHWEST CERMAK LP,<br><br>       Plaintiffs,<br><br>    v.<br><br>FIFTH THIRD BANK and MICHAEL KOZAK, individually,<br><br>       Defendants. | No. 11 C 4586 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

This lawsuit arises out of a broken relationship between Vijay and Vinod Goyal (collectively, "the Goyals"), who are both physicians and owners of various businesses, and their lender Fifth Third Bank ("Fifth Third"). On March 1, 2012, the court granted in part and denied in part a motion to dismiss the plaintiffs' 10-count Amended Complaint, and granted the plaintiffs leave to file a Second Amended Complaint. (Dkt. No. 37.) On March 20, 2012, the plaintiffs filed a Second Amended Complaint listing only a handful of the Goyals' business entities as plaintiffs. (Dkt. No. 42 ("Second Am. Compl.").) The Second Amended Complaint raises three claims against both Fifth Third and Michael Kozak, the loan officer assigned to the plaintiffs' accounts: (1) discrimination and retaliation under 42 U.S.C. § 1981 (Count I); (2) discrimination and retaliation under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1-3) (Count II); and (3) a failure to provide

a statement explaining the revocation of credit, as required by the ECOA, 15 U.S.C. § 1691(d) (Count III). Plaintiff A.H. Employee Company, Ltd. ("AHE") also raises a claim that Fifth Third breached a revolving note establishing the terms of Fifth Third's loan to AHE (Count IV). Finally, all the plaintiffs except AHE, each of whom was a guarantor of AHE's loan, claim that Fifth Third breached their loan contracts by enforcing the defaults that were triggered by AHE's default (Count V). Before the court is the defendants' "Rule 12(b)(6) Motion to Dismiss" (Dkt. No. 52.) For the reasons stated herein, the motion is granted as to Counts III, IV, and V.

## BACKGROUND

The following facts are taken from the plaintiffs' Second Amended Complaint and are accepted as true for the purposes of this motion. Plaintiff AHE is an Illinois corporation owned and managed by the Goyals. (Second Am. Compl. ¶ 3.) Vijay Goyal was born in India; Vinod Goyal in Nepal. (*Id.* ¶ 4.) Both are of the Hindu religion and are United States citizens. (*Id.*) The Goyals also own several limited partnerships, including plaintiffs Southwest Pacific LP, Forestview River LP, Alabama-Illinois LP, Atlanta-Illinois LP, Arizona-Illinois LP, Lake Jefferson LP, Southwest Cermak LP, and 1640 North Partnership LP. (*Id.* ¶ 5.) For purposes of this opinion, the Goyal-owned businesses will be referred to collectively as the "Goyal entities," where appropriate.

Fifth Third Bank is incorporated in Ohio and headquartered in Tennessee. (*Id.* ¶ 6.) It operates throughout the Chicago area. (*Id.*) Michael Kozak is a vice president at Fifth Third. (*Id.* ¶ 7.) The Goyals and their businesses had a long-standing relationship with Fifth Third. (*Id.* ¶ 8.) Beginning in 2003, the Goyal entities borrowed an aggregate of more than $9 million from Fifth Third, and never made a late payment on those loans. (*Id.*) The Goyal entities had several loans with Fifth Third, including loans to: (1) Southwest Pacific LP with a principal of $557,949.13; (2)

Forestview River LP with a principal of $977,701.28; (3) Alabama-Illinois LP with a principal of $800,000; (4) Atlanta-Illinois LP with a principal of $800,000; (5) Arizona-Illinois LP with a principal of $800,000; (6) Lake Jefferson LP with a principal of $2,046,535; (7) Southwest Cermak LP with a principal of $560,000; and (8) 1640 North Partnership LP with a principal of $953,608. (*Id.* ¶ 9.) In addition, AHE had a loan from Fifth Third with a principal of $750,000. (*Id.* ¶ 10.)

The revolving note for the AHE loan (the "A.H. Note") is at the center of this dispute. It was issued on March 17, 2008, and was secured by guaranties of the other Goyal entities. (*Id.* ¶¶ 10-11.) By its terms, the A.H. Note was to renew automatically for a period of one year on the anniversary date of the note "unless [Fifth Third] delivers to [AHE] a written notice stating that the Maturity Date will not be extended, with such written notice to be delivered to [AHE] by [Fifth Third] at least 30 days prior to any such anniversary date of this Note." (Dkt. No. 42, Ex. A ¶ 1.) On both March 17, 2009, and March 17, 2010, the A.H. Note was automatically renewed. (*Id.* ¶ 14.) In early 2008, the A.H. Note, and the rest of the Goyal entities' loan portfolio, was transferred to a new loan officer, Kozak. (*Id.* ¶ 15.)

> On January 26, 2011, Vijay Goyal received an email from Kozak stating that:
>
> Per our meeting a couple months ago, I had let you know that we would be sending the attached notification letter for the auto renewing line of credit in the name of [AHE]. This letter will serve as the notice that is required per the loan agreement (copy also attached) prior to the anniversary date of the note (March 17, 2011). This letter is also being sent to you and Vinod's attention via certified mail. In order to extend the line of credit past the said anniversary date we need the following information below to review.

(Dkt. No. 42, Ex. B.) The email then proceeded to list various records. It next stated that:

> In addition we had discussed in our meeting that going forward if the line of credit is approved for an extension after formal credit review, beginning with fiscal year 2011 (ending 12/31), the bank will require reviewed consolidating financial statements for all Goyal owned related entities prepared by an accounting firm

acceptable to the bank.

(*Id.*) Attached to the email was a letter from Kozak to the Goyals regarding the A.H. Note, dated January 25, 2011, and stating:

> Fifth Third has conducted an evaluation of the above referenced Note. As prescribed under the current terms of the agreement, the undersigned hereby notifies you of the Bank's intent to not renew the Note under its current terms. Based on the Bank's recent evaluation, the Note will be due and payable on March 17, 2011.

(*Id.*) Following the email of January 26, Fifth Third and AHE engaged in ongoing communications about the renewal of the A.H. Note. (Second Am. Compl. ¶ 25.) On February 28, 2011, Kozak sent an email to the Goyals indicating certain discrepancies in the Goyal entities' financial statements and stating that:

> In order to consider renewing the line of credit for a 12 month period, we will require reviewed consolidated financial statements by a firm acceptable to the bank for all Goyal owned entities for the 12 month period ending 12/31/10. . . . If we can receive a commitment letter from the 3rd party CPA confirming that they are preparing the financials as requested and the date that they will be completed we would consider a 60 day extension to allow the CPA time to complete. Until we have that commitment letter, the line of credit facility in the name of [AHE] . . . will expire on 03/17/11.

(Dkt. No. 42, Ex. C.) On March 16, 2011, the Goyals sent to Fifth Third a commitment letter from a CPA as requested. (Second Am. Compl. ¶ 30.)

Nonetheless, on March 21, 2011, Fifth Third sent a notice of default to AHE informing it that it would be in default if the note was not paid off by March 31, 2011, which represented the end of the 10-day cure period. (*Id.* ¶ 32). On April 7, 2011, Fifth Third sent notices to the Goyal entities identified as guarantors of the A.H. Note, demanding that they pay off the outstanding balance of the A.H. Note. (*Id.* ¶ 33.) Then, on April 22, 2011, Fifth Third sent default and acceleration notices to the Goyal entities informing them that their loans were in default because of the default of the

A.H. Note. (*Id.* ¶ 34.) The Goyal entities' loans had been in good standing until the April 22, 2011, default notice was issued. (*Id.* ¶ 35.) On April 27, 2011, AHE paid off the A.H. Note in full, including legal fees. (*Id.* ¶ 36.) Nonetheless, Fifth Third maintains that all of the Goyal entities' loans are in default due to the alleged default on the A.H. Note. (*Id.* ¶ 37.)

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

The defendants move to dismiss Counts III, IV, and V of the Second Amended Complaint.

Because the disposition of Counts III and V turns on Count IV, the court will begin with a discussion of that count.

I.      AHE's Claim for Breach of the A.H. Note (Count IV)

The plaintiffs allege that Fifth Third failed to provide notice of its intention not to extend the maturity date of the A.H. Note to March 17, 2012. (Second Am. Compl. ¶ 62.) According to the plaintiffs, the A.H. Note was thus automatically extended to March 17, 2012, and Fifth Third breached the note by nonetheless finding AHE to be in default when AHE did not pay the A.H. Note by March 17, 2011. The defendants' motion, however, contends that the January 26, 2011, email and the attached letter[1] constitute the required notice, and that they were therefore justified in finding AHE in default. The parties' dispute therefore turns on whether the January 26 email and the attached letter were sufficiently clear to give the required notice.

Illinois law applies to enforce the A.H. Note. (Dkt. No. 42, Ex. A ¶ 16.) Under Illinois law, notice is sufficient to terminate a contract in accordance with its terms if it "clearly discloses to persons of ordinary intelligence what is intended." *Paradise v. Augustana Hosp. and Health Care Ctr.*, 584 N.E.2d 326, 328 (Ill. App. Ct. 1991).

Here, the plain terms of the letter attached to the January 26 email unequivocally give notice that the A.H. Note would not be renewed: "As prescribed under the current terms of the agreement, the undersigned hereby notifies you of the Bank's intent to not renew the Note under its current terms. Based on the Bank's recent evaluation, the Note will be due and payable on March 17,

---

[1] Both the email and the attached letter were attached to the Second Amended Complaint. The court may consider documents attached to a complaint on a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

2011."[2]

(Dkt. No. 42, Ex. B.) The plaintiffs contend, however, that the email makes the attached letter ambiguous with its statements that "[i]n order to extend the line of credit past the said anniversary date we need the following information below to review" and that "going forward if the line of credit is approved for an extension after formal credit review, the bank will require reviewed consolidating financial statements." (Dkt. No. 42, Ex. B.) According to the plaintiffs, those statements, along with the further activity of both parties as the plaintiffs delivered financial records to Fifth Third, indicate that Fifth Third was still considering whether to renew the A.H. Note, and that they thus did not communicate an intent not to renew.

That argument fails. Although the email does indicate that Fifth Third was willing to reconsider its decision, that willingness does not make the notice to AHE that Fifth Third did not intend to renew any less clear. A person of ordinary intelligence who received the email and the attached letter together would have reasonably understood that Fifth Third was not planning to renew, but that it was willing to reconsider its decision if AHE provided further information. Accordingly, Fifth Third provided adequate notice of its intent not to renew the A.H. Note, and it did not breach the A.H. Note by finding AHE in default.[3]

---

[2] The plaintiffs argue that this language is not clear because it does not parrot the language of the A.H. Note itself and state that "the Maturity Date will not be extended." (Dkt. No. 42, Ex. A ¶ 1.) A person of ordinary intelligence, however, would not require such precision to understand that the language accomplishes the same thing. If the Note is "payable on March 17, 2011," it plainly has not been extended past that date.

[3] The parties spill much ink arguing over the applicability of the Illinois Credit Agreements Act ("ICAA"), which provides that a debtor cannot maintain an action based on a "credit agreement" unless the agreement "is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." 815 ILCS 160/2. The defendants contend that the ICAA

II.     Plaintiffs' Claims for Breach of the Cross-Defaulted Loans (Count V)

Count V alleges that Fifth Third breached the loan agreements of the Goyal entities[4] when it found them in default as a result of the default of the A.H. Note, which the Goyal entities had all guaranteed. In support of that claim, the plaintiffs assert that they should have had 30 days to cure the default of the A.H. Note before their own loans were defaulted. They base that contention on ¶ 9(c) of their loan agreements, which states that there is an event of default if:

> Borrower or any Guarantor shall fail to observe or perform any other term or condition of this Note or any other term or condition set forth in any agreement, instrument, document, certificate, or financial statement evidencing, guarantying, or otherwise related to this Note or any other Obligation,[5] or Borrower or any Guarantor shall otherwise default in the observance or performance of any convenant or agreement set forth in any of the foregoing for 30 days after written notice from Lender to Borrower of such default.

(Dkt. No. 42, Ex. D ¶ 9(c).) Because the Goyal entities received notice of the A.H. Note default on April 7, they contend that they should have had until May 7 to cure, and that the payment in full of the A.H. Note on April 27 thus should have been enough to prevent default of the Goyal entities.

As Fifth Third points out, however, the plaintiffs have cited the wrong provision of their loan agreements. Paragraph 9(c) applies to "any other term or condition" of the Note or other Obligation. It does not apply, therefore, to the terms and conditions described immediately previoulsy, which

---

applies to block any alleged modification of the A.H. Note based on the January 26 email, which is not a writing signed by both sides. Because the plaintiffs are not asserting that the A.H. Note was ever modified, however (*see* Dkt. No. 60, at 4-5), the court need not address the applicability of the ICAA.

[4] When discussing Count V, the court will use the term "Goyal entities" to refer to all of the plaintiffs except AHE.

[5] "Obligation" here and in ¶ 9(a) is defined to include "all loans . . . of Borrower owed to . . . Lender . . . of every kind and description . . . as guarantor," and thus includes AHE's obligations under the A.H. Note, of which the Goyal entities were guarantor. (Dkt. No. 42, Ex. D ¶ 8(f).)

are subject to their own conditions in ¶ 9(a) and ¶ 9(b). Relevant here is ¶ 9(a), which provides that the Goyal entities will default upon "[a]ny failure to make any payment when due of principal or accrued interest on this Note or any other Obligation and such nonpayment remains uncured for 10 days after written notice from Lender to Borrower of such default." (Dkt. No. 42, Ex. D ¶ 9.) Because the event triggering the Goyal entities' default was AHE's failure to pay the A.H. Note in full when due, ¶ 9(a), not ¶ 9(c), applies. The Goyal entities thus had ten days following April 7 to pay off the A.H. Note to avoid their own default. The payment of the A.H. Note on April 27 was too late to achieve that purpose. Fifth Third thus rightly treated the Goyal entities as in default in its notice of April 22. The Goyal entities' breach of contract claim fails.

III.     Plaintiffs' ECOA Claim (Count III)

Count III alleges that Fifth Third and Kozak violated the ECOA's requirement that "[each] applicant [for credit] against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). The plaintiffs' claim under the ECOA fails, however, because the ECOA explicitly provides that an adverse action "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." As explained above, both AHE and the other Goyal entities were in default on their respective notes at the time Fifth Third revoked their credit, so the defendants was not obligated to provide a statement of reasons for their actions.

In response, the plaintiffs continue to argue against the validity of the default, arguing that Fifth Third promised in its email of February 28 to continue providing credit under the A.H. Note if AHE supplied a commitment letter from an accountant, which AHE did on March 16. (Second Am. Compl. ¶ 30.) The February 28 email, however, did not promise to extend credit upon the

receipt of a commitment letter. Instead, it stated that Fifth Third "would consider a 60 day extension to allow the CPA time to complete" if it received a commitment letter. (Dkt. No. 42, Ex. C.) Accordingly, Fifth Third was under no obligation to provide the 60 day extension, and its decision not to do so meant that AHE was correctly found to be in default on March 21.[6]

CONCLUSION

For the reasons explained above, the defendants' "Rule 12(b)(6) Motion to Dismiss" [52] is granted. Counts III, IV, and V of the Second Amended Complaint are dismissed with prejudice. The defendants' answer is due on or before 7/9/12. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before 7/11/12. This case is set for a report on status and entry of a scheduling order on 7/12/12 at 9 am. The parties are encouraged to discuss settlement.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 26, 2012

---

[6] The court did state in its order of March 1, 2012, regarding the First Amended Complaint that "accepting the allegations of the complaint as true, Plaintiffs allege that Defendants' wrongful actions preceded the default because they made no late payments and provided the information that Defendants requested, but defendants nonetheless wrongfully forced a technical default of the A.H. Note." (Dkt. No. 38, at 15.) The allegations of the Second Amended Complaint and the attached materials, however, indicate that Fifth Third was under no obligation to renew the A.H. Note even if the plaintiffs' payments were not late and even if the plaintiffs provided all the information Fifth Third requested. Instead, Fifth Third provided a valid notice of its intent not to renew the A.H. Note in the January 26 email, and it was therefore justified in finding AHE in default when AHE failed to pay off the A.H. Note when it was due.